UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLOUS B. DRUMMER,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ROBERT NEUSCHMID,<br><br>　　　　　Respondent. | Case No. 18-cv-02159-SI<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

## INTRODUCTION

Marcellous Drummer filed this *pro se* action for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his sentence for first degree murder. For the reasons discussed below, the petition will be DENIED.

## BACKGROUND

Marcellous Drummer challenges the sentence he received upon his conviction for murder committed during a home invasion in which he took part. The California Court of Appeal described the facts of the crime:

> Katrina Fritz worked as a prostitute. She first met Raveesh Kumra in 1999 and he was a regular customer from 2001 or 2002 until 2009. He gave her "hundreds of thousands" of dollars, bought her cars, and paid her bills. Fritz visited Raveesh's home in Monte Sereno, which he shared with his ex-wife Harinder Kumra, "probably thousands" of times. Fritz also took her younger brother, DeAngelo Austin, to the Kumras' residence two or three times when he was a teenager. After 2009, Fritz continued to see Raveesh occasionally. She last saw Raveesh in November or December 2011.
>
> Shortly after Thanksgiving in 2012, Austin told Fritz that he was going to go to the Kumras' house, which she understood to mean that he was going to rob them. In response to Austin's questions, Fritz told him that there would probably be money and jewelry in the house. Later, Austin called and asked her for a layout of the

Kumras' house. She arranged to meet Austin in Oakland. When Austin arrived, both he and defendant exited the vehicle. Defendant had known Austin since childhood and Fritz for about 10 years. There was a third African–American man in Austin's car, but Fritz did not get a good look at him. Austin told her that this man was from Ghost Town and was his "partner." Fritz gave the sketch to Austin and pointed out Raveesh's and Harinder's bedrooms. Defendant said something like, "I bet you they have a lot of gold."

On the night of November 29, 2012, Harinder woke up when Austin entered her bedroom. After she began screaming, he hit her, which caused her lip to bleed. Austin told her, "I'll take you to Ravee. Keep walking, otherwise, you know, you'll get hurt again." He also told her, "Just go on; otherwise, we'll kill you." She got out of the bed and walked downstairs through the living room and the dining room to the kitchen. When she got to the kitchen, she saw Raveesh standing up with his hands tied behind his back. Raveesh was struggling and asking for help. The men pushed Raveesh to the floor.

Harinder twice said, "Don't push him. He's a heart patient. He'll die. And he has a breathing problem." The men blindfolded her and tied her hands with masking tape. They told her to lie down on the floor, where her legs were bound with a blanket. Someone yelled at her, "Don't move. You're moving," and then hit her on the legs. She stayed in the same position for several hours. They also took the jewelry that she was wearing.

One of the robbers asked her where the money and the safe were. Harinder responded that the money was in the bedroom and the safe was in the pantry. Harinder said to them many times, "He has not moved. Please check him out. Please check him." There was a person sitting near her, who told her that Raveesh was okay. He said, "Don't worry. We'll call 911 if anything goes wrong. Okay?" He later said, "I'm going to gather the other people now. We will be going very soon, but don't you get up. If you do, it won't be good." The man also told her, "Okay. I'm going to gather people. Don't get up until we come back and tell you when to get up." He left, and she waited. She was eventually able to free her legs. She tried to cut the tape binding her hands, but was unable to do so. The robbers had broken all the phones except a cell phone that had been hidden. Harinder called 911.

When the police arrived, Raveesh was unresponsive. Paramedics soon arrived and pronounced him dead. The cause of death was probable asphyxia due to suffocation resulting from the duct tape over his mouth. The police took Harinder to the hospital where she received six or seven stitches to her lip.

The robbers had ransacked the house and taken cash, coins, and jewelry. Gifts for the Kumra's daughter's wedding had also been taken.

*People v. Drummer*, No. H041826, 2017 WL 2590783, at *1–2 (footnote omitted) (Cal. Ct. App. June 15, 2017).

Following a jury trial in Santa Clara County Superior Court, Drummer was found guilty of murder, robbery of an inhabited place while acting in concert, battery, making criminal threats, and false imprisonment. The jury also found true a special circumstance allegation as to the murder, *see* Cal. Penal Code § 190.2(a)(17), and gang allegations as to all the offenses. The trial court found

2

1  true an allegation that Drummer had served a prior prison term. The trial court imposed a sentence
2  of ten years in prison, plus 15 years to life in prison, plus life in prison without the possibility of
3  parole.

4  Drummer appealed. On June 15, 2017, the California Court of Appeal upheld the convictions and sentences on all the felony counts and enhancements, but reversed the misdemeanor battery conviction. The appellate court also ordered that a stayed term for the gang enhancement on the murder count be stricken and that the abstract of judgment be corrected. The California Supreme Court denied review on July 19, 2017.

Drummer then filed this action. His petition alleged a state law claim and a claim that his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution were violated by his sentence because California's felony murder special circumstance statute "does not meaningfully narrow the class of felony-murder defendants subject to a special circumstance finding." Docket no. 1 at 20. The court dismissed the state law claim and ordered respondent to answer the federal constitutional claim. Respondent has filed an answer and Drummer has not filed a traverse. The matter is now ready for a decision on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Santa Clara County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**LEGAL STANDARD**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated

3

on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id*. at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court, if there is a reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). When the state court has denied a federal constitutional claim on the merits without explanation, the federal habeas court "must determine what arguments or theories supported or . . .

4

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Id*. at 102.

**DISCUSSION**

A.  Felony-Murder Special Circumstance Sentence

"To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988) (quoting *Zant v. Stephens*, 462 U.S. 862, 877 (1983)). This narrowing function can be achieved by either laws that "narrow the definition of capital offenses" or laws that "more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." *Id.* at 246.

Drummer argues that the foregoing narrowing principle from Eighth Amendment death penalty jurisprudence should be applied in the context of sentences of life imprisonment without the possibility of parole ("LWOP"). He argues that his LWOP sentence violates the Eighth Amendment because California's felony-murder special circumstance statute "does not meaningfully narrow the class of felony-murder defendants subject to a special circumstance finding." Docket No. 1 at 20.

Under California law, a murder "committed in the perpetration of, or attempt to perpetrate . . . robbery" is first degree murder. Cal. Penal Code § 189. First degree murder is punishable by death, life imprisonment without the possibility of parole, or 25 years to life in prison. *See* Cal. Penal Code § 190(b). If a defendant is found to have committed the first-degree murder in the course of certain felonies, including robbery, the punishment is death or life imprisonment without the possibility of parole. *See* Cal. Penal Code § 190.2(a)(17). Drummer's view is that § 190.2(a)(17) violates the Eighth Amendment because it does not narrow the class of murderers eligible for the death penalty or LWOP sentences from the group of murderers who otherwise will receive a sentence of 25 years to life.

The California Court of Appeal rejected Drummer's challenge to the felony murder special circumstance sentence:

> Defendant argues that the special circumstance finding must be vacated. He argues that since "the special circumstance statute does not meaningfully narrow the class of felony-murder defendants subject to a special circumstance finding," the statute violates the Eighth and Fourteenth Amendments. We disagree.
>
> Defendant acknowledges that the California Supreme Court has repeatedly rejected this argument in death penalty cases. (*See, e.g., People v. Enraca* (2012) 53 Cal.4th 735, 769 ["the felony-murder special circumstance (§ 190.2, subd. (a)(17)) is not overbroad and adequately narrows the pool of those eligible for death"]; *People v. Williams* (2010) 49 Cal.4th 405, 469; *People v. Gamache* (2010) 48 Cal.4th 347, 406.) Defendant also acknowledges that this court is bound by those decisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) He states that he is raising the issue solely to preserve it for review in the California Supreme Court and federal courts.

*Drummer*, at *4-5.[1]

The California Court of Appeal's rejection of Drummer's Eighth Amendment claim was not contrary to or an unreasonable application of clearly established Federal law, as set forth by the U.S. Supreme Court. The narrowing principle applicable in the death penalty context has never been held by the Supreme Court to apply to the non-death- penalty context. In fact, "the Supreme Court has refused to extend this rule to require states to distinguish between criminals sentenced to LWOP and those sentenced" to life with the possibility of parole or lesser sentences. *Houston v. Roe*, 177 F.3d 901, 906 (9th Cir. 1999) (citing *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (plurality)); *see also Bradway v. Cate*, 588 F.3d 990, 991 (9th Cir. 2009) (petitioner with LWOP sentence "recognizes that he lacks standing for an Eighth Amendment death penalty challenge because he was not sentenced to death"); *cf. id.* at 992 (Supreme Court has not issued a holding regarding the failure to narrow the class of first degree murderers to those properly eligible for an LWOP sentence); *id.* (Supreme Court also has not decided any case "that could reasonably support [a] due process claim of unconstitutional vagueness based on a failure to narrow the class subjected to more severe penalties").

---

[1] After the California Court of Appeal rejected his claim, Drummer petitioned for review in the California Supreme Court, asking that court to "reconsider its holding that the special circumstance statute is constitutional." Docket No. 1 at 20. The California Supreme Court denied review, thereby declining to reconsider its earlier holding.

Due to the Supreme Court's refusal to extend the narrowing principle to the LWOP context, the state court of appeal's failure to extend the principle to the LWOP context does not support relief under § 2254(d)(1). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (in capital case, not objectively unreasonable for state court not to extend to penalty phase constitutional rule that applies to guilt phase). Drummer is not entitled to the writ on his challenge to his sentence.

B. No Certificate of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is DENIED.

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: November 26, 2018

SUSAN ILLSTON
United States District Judge

7